IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 04-cv-02031-EWN-OES


JOHN A. TRUJILLO,

Applicant,

v.

LARRY REID, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,
KEN SALAZAR,

Respondents.

---

## RECOMMENDATION FOR DISMISSAL

---

**Entered by O. Edward Schlatter, United States Magistrate Judge.**

## <u>INTRODUCTION</u>

Applicant has pending before this court an Application For A Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 ("Application").  Respondents have filed their

Answer, and applicant has submitted his Traverse.  Pursuant to 28 U.S.C. §

636(b)(1)(B), and D.C.COLO.LCivR 72.1, this matter has been referred to me for

Recommendation.

Applicant is entitled to seek review or reconsideration of my recommendation by

filing "objections" to this recommendation within ten days.  An advisement of his right to

appeal or object is attached to this Recommendation on a page which is entitled

"Advisement Under Fed.R.Civ.P. 72."

## BACKGROUND

Applicant, a Colorado state prisoner, was convicted of first degree murder, attempted aggravated robbery, first degree assault, and four counts of aggravated robbery in the District Court of the City and County of Denver, Colorado, in early 1995. Based on his conviction, applicant was sentenced to life in prison without the benefit of parole for first degree murder, and various concurrent and consecutive sentences on the other charges. Applicant filed a timely direct appeal of his conviction and sentence, which was remanded by the Colorado Court of Appeals for further proceedings under Batson v. Kentucky, 476 U.S. 79 (1986), but otherwise rejected on appeal.

A hearing consistent with the remand of the appellate court was conducted by the trial court, and a written order was issued denying applicant's Batson challenge. The Colorado Court of Appeals affirmed the trial court on appeal, and the Colorado Supreme Court denied certiorari on December 18, 2000.

Additionally, applicant filed a motion for postconviction relief, alleging ineffective assistance of trial counsel, on December 19, 2001. Counsel was appointed to assist the applicant in this motion, however, the motion was denied without hearing. Exhaustion of state court remedies in this regard was not yet complete on October 1, 2004, when applicant filed his federal habeas Application in this court.

In his Application, the applicant argues that the proceedings held on remand of his Batson challenge in connection with his direct appeal violated his Sixth Amendment

2

and Due Process rights because a new trial, and not remand, was the appropriate relief

to be granted.  Further, the applicant contends that his rights were violated because in

the remand proceedings, the prosecution was allowed to expand its reasons justifying

its peremptory challenges beyond those stated at trial, his motion for disclosure of the

prosecution's voir dire notes was denied, and he did not receive a full and fair hearing

on remand.  Applicant also argues that his Due Process rights were violated by the

erroneous admission of eyewitness identification testimony and by the trial court's

instruction that intoxication was not a defense to the crimes charged.

       In their Answer, the respondents concede that the Application is timely filed, and

that the claims presented have been properly exhausted in state court.  However, the

respondents argue that under the standards for reviewing state court convictions set

forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the

applicant's claims are without merit.    Applicant has strenuously objected to the

position of the respondents in his Traverse.

       Applicant appears before this court *pro se*, and therefore, the court will construe

his pleadings and other papers liberally, holding them to a less stringent standard than

more formal papers filed by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520-21

(1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

## DISCUSSION

**I.      Standard of Review.**

       In the course of reviewing state criminal convictions in federal habeas corpus

proceedings, a federal court does not sit as a super-state appellate court.  See Estelle

v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990);

Pulley v. Harris, 465 U.S. 37, 41 (1984). "When a federal district court reviews a state

prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the

[applicant] is 'in custody in violation of the Constitution or laws or treaties of the United

States.' The court does not review a judgment, but the lawfulness of the [applicant's]

custody *simpliciter*." Coleman v. Thompson, 501 U.S. 722, 730 (1991).

Applicant's conviction became final after April 24, 1996, which is the effective

date of the AEDPA. See Caspari v. Bohlen, 510 U.S. 383, 390 (1994) (noting that "[a]

state conviction and sentence become final . . . when the availability of direct appeal to

the state courts has been exhausted and the time for filing a petition for writ of certiorari

has elapsed or a timely filed petition has been finally denied"). Accordingly, review of

his Application is governed by the AEDPA. Under the AEDPA, an applicant is entitled

to federal habeas relief only if he can establish that the state court decision was

"contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States," or was "based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see, also, Hale v. Gibson, 227 F.3d

1298, 1309 (10th Cir. 2000).

As the Supreme Court recently stated:

A state-court decision is contrary to . . . clearly established precedents if it
applies a rule that contradicts the governing law set forth in [Supreme
Court] cases, or if it confronts a set of facts that is materially
indistinguishable from a decision of [the Supreme] Court but reaches a
different result. A state-court decision involves an unreasonable
application of this Court's clearly established precedents if the state court

4

applies this Court's precedents to the facts in an objectively unreasonable manner.

Brown v. Payton, - - - U.S. - - -, 125 S.Ct. 1432, 1438-39 (2005) (internal citations omitted).

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). So, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the reviewing court may presume an adjudication on the merits and apply AEDPA deference. See Harris v. Poppell, 411 F.3d 1189, 1196 (10th Cir. 2005).

Factual findings made by the state trial and appellate courts are presumed correct, with the applicant having the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Darks v. Mullin, 327 F.3d 1001, 1007 (10th Cir. 2003). "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." Holland v. Jackson, 542 U.S. 649 (2004) (per curiam) (citations omitted).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," Brecht v. Abrahamson, 507 U.S. 619, 629 (1993), the harmless error standard of Brecht and O'Neal v. McAninch, 513 U.S. 432 (1995), must be applied. See Herrera v. Lemaster, 301 F.3d 1192, 1200 (10th Cir. 2002). Under Brecht, habeas

5

relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 623.  O'Neal addresses the situation where the court is in "grave doubt" about the likely effect of the error on the jury's verdict – that is, where "the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error."  O'Neal, 513 U.S. at 435.  In such a case, O'Neal instructs the court to treat the error "as if it had a substantial and injurious effect or influence in determining the jury's verdict."  Id. (quoting Brecht, 507 U.S. at 623).

## II.  Plaintiff's Claims.

### A.  Allegations of Impropriety Under Batson.

#### 1.  Proper remedy upon finding of an error.

Applicant argues that his constitutional rights were violated when the Colorado Court of Appeals remanded his first appeal for further proceedings by the trial court after making a finding that a Batson error had been made by the trial court, rather than directing that a new trial be held.

As argued by the applicant in his direct appeal, by its decision in Batson, the United States Supreme Court banned the use of peremptory challenges by the government to remove prospective jurors based upon their race.  In this regard, the Court has directed that a three-part test be used to determine whether one or more jurors have been unconstitutionally removed from a jury for racial reasons.  Batson, 476 U.S. at 96.  However, the Supreme Court has not ruled on the issue of whether reversal or remand is the appropriate remedy on appeal if a finding that a Batson error occurred

6

at trial has been made by the appellate court.  In his direct appeal, the applicant

conceded that the question of what the appropriate remedy for a finding of a <u>Batson</u>

error on appeal is "an issue of first impression."  <u>See</u> ANSWER, Docket #13, Appx. L, p.

14.  Therefore, the Colorado Court of Appeal's decision on this issue cannot be

"contrary to" clearly established Supreme Court precedent.

The state court identified the correct governing law with respect to applicant's

<u>Batson</u> claim, and it did not, on a question of law, reach a conclusion opposite to that of

the Supreme Court.  Additionally, the Supreme Court has not yet decided a case that

is, on its facts, materially indistinguishable from the applicant's case.  Accordingly,

federal habeas relief is not appropriate under the standard set forth in 28 U.S.C. §

2254(d)(1).

Further, under Colorado state law, the remedy available when a trial court does

not make all the findings necessary under <u>Batson</u> (as was argued by the applicant in

his initial direct appeal) is a remand for further proceedings.  <u>See</u> <u>Middleton v. Beckett</u>,

960 P.2d 1213, 1215 (Colo.Ct.App. 1998); <u>People v. Mendoza</u>, 876 P.2d 98, 101-102

(Colo.Ct.App. 1994).  Therefore, as a matter of law, remand is the remedy available to

the applicant in the situation presented and analysis pursuant to 28 U.S.C. § 2254(d)(2)

is not warranted.

**2.    Scope of <u>Batson</u> hearing on remand.**

Applicant argues that his constitutional rights were violated when, on remand,

the prosecution was improperly allowed to expand its reasons justifying its peremptory

challenges beyond those stated at trial.  The issue of what the proper scope of a

7

Batson hearing is on remand has also not been determined by the Supreme Court.

Therefore, again, the Colorado Court of Appeal's decision on this issue cannot be

"contrary to" clearly established Supreme Court precedent, because there is none.

Neither has the Supreme Court decided a case that is, on its facts, materially

indistinguishable from the applicant's case.

The Colorado Court of Appeals found that based upon the "explicit language in

the remand," allowing the prosecution to expand the proffered justification for its

peremptory challenges was not error by the trial court.  See ANSWER, Docket #13,

Appx. O.  When an appellate court issues a decision and remands the case, then the

trial court must generally be obedient in carrying out the higher court's mandate.  See

Ute Indian Tribe v. Utah, 114 F.3d 1513, 1520 (10th Cir. 1997) ("the 'mandate rule,'

provides that a district court must comply strictly with the mandate rendered by the

reviewing court.") (quotations omitted); see, also, U.S. v. Bell, 988 F.2d 247, 251 (1st

Cir. 1993) (collecting cases).  Further, the Supreme Court has emphasized that at the

final step of the Batson analysis, the trial court's determination of discrimination turns

on its evaluation of the prosecutor's credibility.  See Hernandez v. New York, 500 U.S.

352, 365 (1991).  Accordingly, even though a subsequent hearing may allow the

prosecution an opportunity to present reasons for peremptory strikes that were not

made at the time of voir dire, the information can appropriately be considered in the

assessment of the prosecutor's credibility.  See United States v. Romero-Reyna, 889

F.2d 559, 561-62 (5th Cir. 1989).  Accordingly, the decision did not involve an

unreasonable application of established federal law and, once again, 28 U.S.C. §

8

2254(d)(1) does not provide a basis upon which applicant can receive habeas relief in this court on this claim.

Additionally, in light of the evidence presented in the state court proceedings, to include the mandate of the Colorado Court of Appeals issued on applicant's initial direct appeal, habeas relief pursuant to 28 U.S.C. § 2254(d)(2) on this claim is not warranted.

### 3.    Discovery of prosecution's voir dire notes.

Applicant argues that he was denied his Sixth Amendment right to confrontation and his due process rights violated based on the denial of his motion seeking disclosure of the prosecution's voir dire notes.  However, the "main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  Richmond v. Embry, 122 F.3d 866, 871 (10th Cir. 1997) (*quoting* Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986)).  "[A] defendant's right to confrontation may be violated if the trial court precludes an entire relevant area of cross-examination."  Id. (*quoting* United States v. Begay, 937 F.2d 515, 520 (10th Cir. 1991)).  Applicant's claim that his request for the prosecution's voir dire notes was unconstitutionally denied cannot fall within the Confrontation Clause framework because, based on the remand mandate of the Colorado Court of Appeals, he was expressly given the opportunity to respond to any race-neutral explanations the prosecutor was allowed to give in the subsequent proceedings.  See ANSWER, Docket #13, Appx. O, p. 4.  Accordingly, applicant's claim cannot be that he was denied his constitutional right of confrontation, but rather that he was denied the right to obtain

discovery necessary to respond as allowed on remand, which alleges a violation of general principles of due process. *Cf.* Richmond, 122 F.3d at 871 (recharacterizing the applicant's confrontation clause claim as a due process claim that he was not able to present testimony necessary to his defense). Therefore, applicant's allegations are construed to allege solely a violation of due process.

Petitioner has failed to demonstrate that the unavailability of the prosecution's voir dire notes rendered the proceedings fundamentally unfair, the requisite standard for establishing a due process violation. See Estelle v. McGuire, 502 U.S. 62, 70 (1991) (evidentiary rulings must result in a fundamentally unfair proceedings before they rise to the level of a due process violation); see, also, Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) (the federal courts will not disturb a state court's evidentiary rulings unless the court's error was so "grossly prejudicial" that it fatally infected the proceedings and denied the fundamental fairness that is the essence of due process). In applying the provisions of § 2254(d), it is clear that the state court's ruling is in accordance with federal law as determined by the United States Supreme Court.

The work-product privilege has been extended to criminal cases. United States v. Nobles, 422 U.S. 225, 238 (1975). While the Supreme Court has not ruled on the issue of whether voir dire notes are protected by the work-product doctrine in the context of a Batson challenge, it has opined that:

> Moreover, the concerns reflected in the work-product doctrine do not disappear once trial has begun. Disclosure of an attorney's efforts at trial, as surely as disclosure during pretrial discovery, could disrupt the orderly development and presentation of his case.

Id. at 239.

Neither the reasoning nor the result of the state-court decision contradicts the due process principles which have been announced by the Supreme Court.  It is applicant's burden to show that the state court's decision was objectively unreasonable, not merely that the state court applied Supreme Court rulings incorrectly.  Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).  Neither applicant's Application nor his traverse provide a basis for finding that the state court unreasonably formulated or applied the work-product doctrine in light of Supreme Court precedents, or in a manner which violated due process principles.

### 4.    Proceedings upon remand.

Applicant argues that he was denied a full and fair hearing to rebut the prosecution's proffered justification for its peremptory challenges in the proceedings held on remand.  Specifically, the applicant contends that the trial court denied or ignored all of his requests and motions in violation of his due process and Sixth Amendment rights.  Respondents did not address this argument in their Answer, but because the law on this issue is clear, dismissal of this claim *sua sponte* is appropriate.

As the Supreme Court explained in Crane v. Kentucky, 476 U.S. 683 (1986), regardless of "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane, 476 U.S. at 690 (*quoting* California v. Trombetta, 467 U.S. 479, 485 (1984)).  To demonstrate a violation in this regard, the applicant must show a denial of fundamental fairness: "'In order to declare a denial of

11

[fundamental fairness] we must find that the absence of that fairness fatally infected the [proceedings]; the acts complained of must be of such quality as necessarily prevents a fair [proceedings].'" United States v. Valenzuela-Bernal, 458 U.S. 858, 872 (1982).

While the state court did not label it as such, there is no practical distinction between the analysis and decision of the Colorado state court on appeal and Supreme Court precedent governing full and fair proceedings.  Because the Colorado Court of Appeals applied the same basic test this court would apply to determine whether there had been a constitutional violation, deferral to the state court ruling is warranted unless it "unreasonably appli[ed]" that test.  28 U.S.C. § 2254(d); see, also, Harris, 411 F.3d at 1196 (if the state court rejected the applicant's claim "under a standard that is equally or more favorable to him relative to the federal standard, the state court's decision constitutes an adjudication of the federal claim despite citing no federal decisions.").  It did not.

The focus in fundamental fairness analysis is not whether the state court correctly or incorrectly determined the issues before it, but whether the alleged errors or improprieties were so egregious that they fatally infected the proceedings and rendered the proceedings fundamentally unfair.  See Valenzuela-Bernal, 458 U.S. at 872.  Under this standard, an applicant must show that there is a reasonable probability that the alleged error(s) affected the outcome of the proceedings or, in other words, that absent the alleged impropriety, the outcome probably would have been different. See  United States v. Agurs, 427 U.S. 97 (1976) (a constitutional violation is demonstrated only if the omitted evidence creates a "reasonable doubt" that the verdict

of guilt was correct); <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643, 647-48 (1974) (a criminal appellant or habeas petitioner must show a likelihood that misconduct affected the outcome of the proceedings); <u>Lisenba v. California</u>, 314 U.S. 219, 236 (1941) (for there to be a constitutional violation, a finding that the absence of fundamental fairness fatally infected the trial must be made).

Here, the appellate court found that applicant's principal motion in this regard was granted, and the applicant was invited to make a determination of the racial composition of the jury.  <u>See</u> ANSWER, Docket #13, Appx. O, p. 9.  Further, however, the court found the issues raised in applicant's requests and motions concerning reconstruction of the jury and the selection process were relevant only to the first prong of the <u>Batson</u> test, and since that issue had been resolved in applicant's favor in his initial direct appeal, it was not an issue on remand.  <u>Id</u>.  The court, therefore, concluded that "[i]t is not apparent to us that the information would have been germane to the issues before the trial court on remand."  <u>Id</u>.  Neither the reasoning nor the result of the state court decision ignores nor contradicts Supreme Court precedent with regard to fundamental fairness determinations.

Additionally, review of the briefing by the parties in this regard demonstrates that the decision was not based on an unreasonable determination of the facts.  Both sides strenuously argued the facts and law which supported their position, but the court was ultimately persuaded by the state's position that the racial composition of the jury was not necessary to the ultimate determination of no purposeful discrimination, and ruled accordingly.

13

### 5.     Conclusion.

Adjudication of the applicant's <u>Batson</u> claims by the State courts did not arrive at

a conclusion opposite to that reach by the Supreme Court on a question of law,

unreasonably apply a governing legal principle to the facts of the applicant's case, or

result in an unreasonable determination of facts in light of the evidence presented.

Without such a finding, harmless error analysis by this court is not necessary.

Therefore, applicant's request for federal habeas relief on this account must fail.

### B.     Admission of Eyewitness Identification Testimony.

Applicant claims that he was denied his due process rights by the trial judge's

refusal to suppress identification evidence.  Specifically, applicant argues that the

positioning and background of his photograph in the photographic lineup presented to

witnesses and/or victims was so suggestive as to make their identification based on the

photo unreliable, and that the state courts did not make any findings with regard to

reliability in violation of his constitutional rights.

The Supreme Court has established a two-step inquiry for evaluating the

constitutional permissibility of identification testimony based on out-of-court

identification procedures.  First, the court must determine whether the identification

procedure was impermissibly suggestive.  <u>See</u> <u>Simmons v. United States</u>, 390 U.S. 377

(1968).  Suggestive identification procedures are those that "increase the likelihood of

misidentification."  <u>Neil v. Biggers</u>, 409 U.S. 188, 198 (1972).   If a procedure is found

to be suggestive, then the court must determine, taking into consideration the totality of

the circumstances, whether the identification was nevertheless reliable.  <u>Id</u>. at 199.

14

The Court has delineated five factors to be considered in determining reliability if the identification procedure is found to be suggestive.  Id. at 199-200.

In rejecting the applicant's claim on direct appeal, the Colorado Court of Appeals found that "[t]he record shows that four of the victims were shown the same three photographic lineups shortly after the crimes were committed."  See ANSWER, Docket #13, Appx. D, p. 4.  The appellate court viewed the three photo arrays, and agreed with the trial court "that they contain pictures of men generally matched by similar identifying characteristics."  See Id. at Appx. D, p. 6.  Further, the appellate court found:

> [The] background difference is not so striking as to make the lineup
> unduly suggestive.  In any event, the victims were instructed to ignore any
> color differences in the pictures.  We also agree with the trial court that
> the record contains no evidence of police impropriety when conducting
> these identification procedures.

Id.  The court found that because there was no evidence to demonstrate that the lineup was suggestive, there was no need to look at the totality of the circumstances to determine reliability, but that the trial court had applied a totality of circumstances test when it assessed the photo arrays and the procedures used to present the photos to the victims.  Id.

The state appellate court's ruling, while not citing to Supreme Court cases, is not contrary to nor an unreasonable application of Supreme Court's reasoning with regard to the constitutional permissibility of identification testimony based on out-of-court identification procedures, or the two-step inquiry for evaluating such procedures.  Further, the state court ruling does not contradict Supreme Court precedent.

Additionally, the decision is not an unreasonable determination of facts in light of

the evidence presented to it.  The findings made by the state appellate court are

presumptively correct, and plaintiff has provided no clear and convincing evidence to

rebut those findings.  Accordingly, harmless error analysis is not necessary and plaintiff

cannot obtain habeas relief in this court on this claim.

### C.    Intoxication Instruction.

Applicant challenges the trial court's instruction to the jury that intoxication is not

a defense to a criminal charge.  Specifically, the applicant alleges that the instruction

improperly relieved the prosecution of its burden to prove the intent element of the

prosecution's legal theory of complicity beyond a reasonable doubt in violation of his

constitutional rights.  Applicant concedes that the instruction was not objected to at

trial.  See APPLICATION, Docket #1, Part D.5, p. 6-C.

The state appellate court applied a plain error standard on review of this issue,

since the applicant had not made a contemporaneous objection to the admission of the

testimony at trial.  See ANSWER, Docket #13, Appx. D, p. 7-8.  Colorado's plain error

test is based upon recognized principles of due process under federal law, in that:

> Under this standard [applicant] must demonstrate not only that the
> omission in the instructions affected a substantial right, but also that the
> record reveals a reasonable possibility that the error contributed to his
> conviction..

Id. (citing People v. Rubanowitz, 688 P.2d 231 (Colo. 1984)).

However, the standard applied by the state court in its direct review of

applicant's claim is different than the standard to be used by this court on federal

habeas review.  As the Supreme Court has explained, "The question in . . . a collateral

16

proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (quotation omitted).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Id. at 155.  The burden on a habeas applicant to demonstrate that the improper instruction was so prejudicial that it supports a collateral attack on the constitutionality of his conviction is far greater than what is required to show plain error on direct appeal. Id.  This is especially true where the applicant failed to object to the incomplete instruction at trial. Id. at 154 ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.").  Because the state standard was more favorable to the applicant than the federal standard would be, this court may presume an adjudication on the merits and apply AEDPA deference. See Harris, 411 F.3d at 1196.  Therefore, the question remaining under § 2254(d)(1) is whether the decision involved an unreasonable application of clearly established federal law.

On direct appeal, the Colorado Court of Appeals rejected applicant's claim in this regard.  The appellate court found that under the clear language of the state statute governing the defense of intoxication, Colo. Rev. Stat. § 18-1-804(1), evidence of voluntary intoxication would be relevant only to negate the culpability of a specific intent crime.  See ANSWER, Docket #13, Appx. D, p. 8.  As a matter of state law, "[c]omplicity is not a separate and distinct crime or offense, but rather is a theory of law by which a defendant becomes accountable for a crime of another." Id. (citing People v. R.V., 635 P.2d 892, 894 (Colo. 1981)).  Therefore, under state law, specific intent

17

could not be an element of complicity.  Id.  Accordingly, the court concluded, no plain

error could be found in the trial court's giving of the instruction.  Id. at Appx. D, p. 9.

A federal court is "bound by the state's interpretation of the language of its own

statutes and the legislative intent behind them."  Cordova v. Romero, 614 F.2d 1267,

1269 (10th Cir. 1980).  Based upon Colorado state law, the applicant was not entitled to

an instruction on voluntary intoxication as a defense to complicity.  Because the

applicant was not entitled to the instruction, the trial court's failure to give such an

instruction cannot rise to the level of error rendering applicant's trial fundamentally

unfair.  While the state court identified a governing standard that was different from that

found under federal law on the issue presented, the standard used was more favorable

to applicant, and it did not, on a question of law, reach a conclusion opposite to that of

the Supreme Court.  See Visciotti, 537 U.S. at 25 ("An 'unreasonable application of

federal law is different from an incorrect application of federal law'").  Even an incorrect

application of federal standards can be reasonable under the unreasonable application

review dictated by § 2254(d)(1).  See Parker v. Scott, 394 F.3d 1302, 1308 (10th Cir.

2005).   Additionally, the Supreme Court has not yet decided a case that is, on its facts,

materially indistinguishable from the applicant's case.  Accordingly, federal habeas

relief is not appropriate under the standard set forth in 28 U.S.C. § 2254(d)(1).

Federal habeas relief is also not appropriate under the standard of 28 U.S.C. §

2254(d)(2).  The historical facts necessary to the decision of this issue are established,

the rule of law is clear under state precedent, and the facts satisfy that legal standard.

18

## CONCLUSION

In viewing the merits of the applicant's claims, applicant is not entitled to relief under 28 U.S.C. § 2254.  Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required.

Based upon the foregoing analysis, and the entire record herein, I hereby **RECOMMEND** that District Judge Edward W. Nottingham **DENY** the Application [Filed October 1, 2004; Docket #1], and enter an Order directing that this case be dismissed with prejudice.

Dated at Denver, Colorado, this 22nd day of November, 2005.

BY THE COURT:

s/ O. Edward Schlatter

_____
O. Edward Schlatter
United States Magistrate Judge

## ADVISEMENT UNDER FED. R. CIV. P. 72

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. Thomas v. Arn, 474 U.S. 140, 155 (1985); Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991); Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).